UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20331-CR-SCOLA/BANDSTRA

UNITED STATES OF AMERICA

V.

HAFIZ MUHAMMAD SHER ALI KHAN,
ALI REHMAN,
    a/k/a Faisal Ali Rehman,
IRFAN KHAN,
IZHAR KHAN,
ALAM ZEB, and
AMINA KHAN
    a/k/a Amina Bibi,

    Defendants.
_____|

**MOTION TO CLARIFY THE LEGAL AUTHORITY RELIED UPON BY THE GOVERNMENT TO CONDUCT ELECTRONIC SURVEILLANCE**

    Defendant Hafiz Muhammad Sher Ali Khan moves the Court for an order directing the government to state (1) whether the electronic surveillance described in its Notice of Intent to Use Foreign Intelligence Surveillance Act Information or "FISA Notice" (D.E. 17), was conducted pursuant to the pre-2008 provisions of the Foreign Intelligence Surveillance Act ("FISA") or, instead, the FISA Amendments Act of 2008 ("FAA"); and, if the former, (2) whether the affidavit and other evidence offered in support of the FISA warrant relied on any evidence derived from an FAA surveillance order.

    This information is necessary for Mr. Khan to challenge the constitutionality of the electronic surveillance (and potentially the statute authorizing that surveillance) and the admissibility of the statements obtained.

1

## BACKGROUND

### The Foreign Intelligence Surveillance Act

In 1978, Congress enacted the Foreign Intelligence Surveillance Act ("FISA") to regulate government surveillance conducted for foreign intelligence purposes. The statute created the Foreign Intelligence Surveillance Court ("FISC") and empowered it to grant or deny government applications for surveillance orders in foreign intelligence investigations. *See* 50 U.S.C. § 1803(a).

Congress has amended FISA multiple times. In its current form, the statute regulates, among other things, "electronic surveillance," which is defined to include:

> the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire communication to or from a person in the United States, without the consent of any party thereto, if such acquisition occurs in the United States.

50 U.S.C. § 1801(f)(2).

Before passage of the FISA Amendments Act of 2008, FISA generally foreclosed the government from engaging in "electronic surveillance" without first obtaining an individualized and particularized order from the FISC. To obtain an order, the government was required to submit an application that identified or described the target of the surveillance; explained the government's basis for believing that "the target of the electronic surveillance [was] a foreign power or an agent of a foreign power"; explained the government's basis for believing that "each of the facilities or places at which the electronic surveillance [was] directed [was] being used, or [was] about to be used, by a foreign power or an agent of a foreign power"; described the procedures the government would use to "minimiz[e]" the acquisition, retention, and

dissemination of non-publicly available information concerning U.S. persons; described the nature of the foreign intelligence information sought and the type of communications that would be subject to surveillance; and certified that a "significant purpose" of the surveillance was to obtain "foreign intelligence information." *Id.* § 1804(a) (2006).[1]

The FISC could issue such an order only if it found, among other things, that there was "probable cause to believe that the target of the electronic surveillance [was] a foreign power or an agent of a foreign power," *id.* § 1805(a)(2)(A), and that "each of the facilities or places at which the electronic surveillance [was] directed[, was] being used, or [was] about to be used, by a foreign power or an agent of a foreign power," *id.* § 1805(a)(2)(B).

### The FISA Amendments Act of 2008

The FISA Amendments Act ("FAA") was signed into law on July 10, 2008, and provided legislative sanction for the warrantless surveillance of U.S. citizens' and residents' communications.

While leaving FISA in place insofar as communications known to be purely domestic are concerned, the FAA revolutionizes the FISA regime by allowing the mass acquisition of U.S. citizens' and residents' international communications without individualized judicial oversight or supervision. *See Amnesty Int'l USA v. Clapper*, 2011 WL 4381737, at *2–3 (2d Cir. Sept. 21, 2011) (Lynch, J., concurring in the denial of rehearing en banc) ("The FAA significantly alters [FISA's] procedures."); *Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 124–26 (2d Cir. 2011). Under the FAA, the Attorney General and Director of National Intelligence ("DNI") can "authorize jointly, for a period of up to one year . . . the targeting of persons reasonably believed to be located outside the United States to acquire foreign intelligence information." 50 U.S.C.

---

[1] "Foreign intelligence information" was defined to include, among other things, information concerning terrorism, national security, and foreign affairs.

§ 1881a(a). While the Act prohibits the government from "intentionally target[ing] any person known at the time of the acquisition to be located in the United States," *id.* § 1881a(b)(1), an acquisition authorized under the FAA may nonetheless sweep up the international communications of U.S. citizens and residents. Indeed, the Attorney General and the DNI may authorize a mass acquisition under § 1881a—an acquisition encompassing thousands or even millions of communications—even if they know in advance that all of the communications to be acquired under the program will originate or terminate inside the United States.

Before authorizing surveillance under § 1881a—or, in some circumstances, within seven days of authorizing such surveillance—the Attorney General and the DNI must submit to the FISC an application for an order (hereinafter, a "mass acquisition order"). *Id.* § 1881a(a), (c)(2). To obtain a mass acquisition order, the Attorney General and DNI must provide to the FISC "a written certification and supporting affidavit" attesting that the FISC has approved, or that the government has submitted to the FISC for approval, procedures ("targeting procedures") reasonably designed to (1) ensure that the acquisition is "limited to targeting persons reasonably believed to be located outside the United States," and (2) "prevent the intentional acquisition of any communication as to which the sender and all intended recipients are known at the time of the acquisition to be located in the United States." *Id.* § 1881a(g)(2)(A)(i). The certification and supporting affidavit must also attest that the FISC has approved, or that the government has submitted to the FISC for approval, procedures ("minimization procedures") that meet the definition of "minimization procedures" under 50 U.S.C. §§ 1801(h) or 1821(4). The certification and supporting affidavit must also attest, among other things, that the Attorney General has adopted "guidelines" to ensure compliance with the limitations set out in § 1881a(b); that the targeting procedures, minimization procedures, and guidelines are consistent with the

4

Fourth Amendment; and that "a significant purpose of the acquisition is to obtain foreign intelligence information." *Id.* § 1881a(g)(2)(A)(iii)–(vii).

A mass surveillance order is a kind of blank check that, once obtained, covers—without further judicial authorization— whatever surveillance the government may choose to engage in, within broadly drawn parameters, for a period of up to one year.  Accordingly, the Act does not require the government to demonstrate to the FISC that its surveillance targets are foreign agents, engaged in criminal activity, or connected even remotely with terrorism.  Indeed, the statute does not require the government to identify its surveillance targets at all.  Moreover, the statute expressly provides that the government's certification is not required to identify the facilities, telephone lines, e-mail addresses, places, premises, or property at which its surveillance will be directed.  *Id.* § 1881a(g)(4).  Thus, the government may obtain a mass acquisition order without identifying the people (or even the group of people) to be surveilled; without specifying the facilities, places, premises, or property to be monitored; without specifying the particular communications to be collected; without obtaining individualized warrants based on criminal or foreign intelligence probable cause; and without making even a prior administrative determination that the acquisition relates to a particular foreign agent or foreign power.  A single mass acquisition order may be used to justify the surveillance of communications implicating thousands or even millions of U.S. citizens and residents.  To effect such surveillance under the FAA, the government would have to "target" people overseas, but that targeting of people overseas could involve the collection of countless Americans' private communications.

The role of the FISC in authorizing and supervising surveillance conducted under the FAA is "narrowly circumscribed." *In re Proceedings Required by § 702(i) of the FISA Amendments Act of 2008*, No. Misc. 08-01, slip op. at 3 (FISA Ct. Aug. 27, 2008) (internal

5

quotation marks omitted).  Unlike the judiciary's traditional Fourth Amendment role—as a gatekeeper for particular acts of surveillance—the judicial role under the FAA is simply to bless in advance the vaguest parameters under which the government is then free to conduct surveillance for up to one year.  The FISC does not consider individualized and particularized surveillance applications, does not make individualized probable cause determinations, and does not supervise the implementation of the government's targeting or minimization procedures.

The constitutionality of the FAA is being challenged in ongoing litigation.  *See Amnesty Int'l USA v. Clapper*, 2011 WL 4381737 (2d Cir. Sept. 21, 2011) (latest decision, denying rehearing en banc with respect to the question of standing).

## ARGUMENT

Pursuant to 50 U.S.C. § 1806(c), the government has noted its intention of relying in these proceedings on evidence derived from electronic surveillance "conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended."  FISA Notice 2, ECF No. 17.  Mr. Khan intends to challenge the constitutionality of that surveillance and the admissibility of the resulting statements.  To do so, however, he must know the legal authority relied upon by the government to conduct that surveillance: traditional FISA or the FAA.  As described above, surveillance under traditional FISA differs dramatically from surveillance under the FAA, and the constitutional questions associated with each are likewise profoundly distinct.

To date, however, the government has refused to specify whether its surveillance was conducted pursuant to traditional FISA or the FAA.  Instead, the government's counsel, when asked to specify, directed Mr. Khan to the FISA Notice.  But the notice is ambiguous on this question.  The notice statute states, in relevant part, that,

> Whenever the Government intends to enter into evidence or otherwise use or disclose in [a proceeding] against an aggrieved person . . . any information

6

> obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, . . . notify the aggrieved person and the court . . . that the Government intends to so disclose or so use such information.

50 U.S.C. § 1806(c). Notice under this statute does not reveal the legal authority relied upon by the government, however, because surveillance conducted pursuant to the FAA is treated as electronic surveillance under FISA for the purposes of this notice. *Id.* § 1881E. Accordingly, the government's generic notice does not disclose whether the surveillance in this case occurred pursuant to a traditional FISA warrant or an FAA surveillance order.

Moreover, the government has no plausible interest in suppressing the *legal authority* upon which it relied to conduct its electronic surveillance, particularly in the face of Mr. Khan's right to challenge the admissibility of the resulting statements. The answer cannot be that defendants in this situation must conditionally challenge the constitutionality of surveillance under both statutes.

## CONCLUSION

The Court should order the government to disclose whether the electronic surveillance described in its notice was conducted pursuant to a traditional FISA warrant or an FAA surveillance order. If the former, the Court should additionally order the government to disclose whether the affidavit and other evidence offered in support of the FISA warrant relied on any evidence derived from an FAA surveillance order.

WHEREFORE, the undersigned would respectfully request that this Honorable Court grant the foregoing motion.

Respectfully submitted

_____/s/_____
Khurrum B. Wahid
Counsel for Hafiz Khan
Wahid Vizcaino LLP
6221 W. Atlantic Blvd
Pompano Beach, FL 33063
(305) 444-4303
(305) 444-4302 Fax

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of December, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either by electronic transmission generated by CM/ECF, or in some other manner for those counsel or parties who are not able to receive electronic filings.

                                                                                   _____/s/_____
                                                                                    Khurrum B. Wahid
                                                                                    FL Bar 178764
                                                                                    Wahid Vizcaino LLP
                                                                                    6221 W. Atlantic Blvd
                                                                                   Pompano Beach, FL 33063
                                                                                   (305)444-4303
                                                                                   (305)444-4302 Fax