**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.  11-20331-CR-SCOLA/BANDSTRA

UNITED STATES OF AMERICA,

vs.

HAFIZ MUHAMMAD SHER ALI KHAN,
and IZHAR KHAN,

     Defendants.
_____/

**FINAL ORDER ON DEFENDANTS'**
**MOTIONS FOR RULE 15 DEPOSITIONS**

     THIS MATTER is before the Court on Defendants Hafiz Muhammad Sher Ali Khan and Izhar Khan's Motions for Additional Witnesses for Rule 15 Depositions (ECF Nos. 364 and 366).  The Defendants have requested leave to take pretrial depositions of five individuals who all reside in Pakistan (the Pakistan Deponents).  Three of these individuals are indicted co-defendants, one is a co-conspirator who has not been indicted, and one is a fact witness.  The Defendants seek to conduct video-taped depositions of these proposed witnesses in Pakistan with Government counsel present in person, or alternatively, to permit Government counsel to remain in Florida and participate via video-feed.  After an evidentiary hearing on October 18, 2012, this Court found in an Order (ECF No. 538) the following: (1) the Defendants have established that because of exceptional circumstances and in the interest of justice, these depositions should be taken; but (2) due to security concerns in Islamabad, Pakistan, it would be unjust to require the prosecutors in this case to travel to Pakistan to take these depositions.  The Court held a follow-up hearing on October 29, 2012 to consider whether there are any legal or logistical obstacles (a) to permitting the deponents and defense counsel to appear in Islamabad, Pakistan and (b) to having the Government's attorneys appear and participate in the depositions through live video-teleconferencing (VTC).  For the reasons stated below, the Court grants the motion.

1

## I. Analysis

"A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a). The moving party has the burden to establish that exceptional circumstances exist. *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993). Although depositions in criminal trials are generally disfavored, Rule 15 "expressly authorizes parties to take depositions and use them at trial, when doing so is necessary to achieve justice and may be done consistent with the defendant's constitutional rights." *Id.* at 1551. Rule 15's purpose is to preserve testimony that may be needed "to guarantee the deposing party a fair trial." *Id.* at 1557. That testimony may later be used as evidence at trial if the Federal Rules of Evidence permit. Fed. R. Crim. P. 15(f). The two most important factors in determining whether to allow a Rule 15 deposition to be taken are whether the witness is likely to be unavailable and whether their expected testimony is material. *Drogoul*, 1 F.3d at 1552-54. So when "prospective witness[es are] unlikely to appear at trial" and "their testimony is highly relevant to a central issue in the case," basic "fairness requires permitting the moving party to preserve that testimony—by deposing the witness[es]—absent *significant* countervailing factors which would render the taking of the deposition[s] unjust." *Id.* at 1552, 1556 (emphasis added).

The Court found in its previous order (ECF No. 538) that the Pakistan Deponents are substantially unlikely to appear at trial and that their expected testimony is highly material because it addresses the government's allegations and a central defense theory. As to unavailability, the Pakistan Deponents are beyond the subpoena power of the United States. Four of the Pakistan Deponents have submitted sworn affidavits that they are unwilling to travel to the United States to testify. A defense attorney submitted an affidavit stating that he was told by the fifth Pakistan Deponent—Noor Mohammad, an unindicted coconspirator that the government alleges is a Taliban member—that Mohammad was unwilling to travel to the United States to testify unless he received assurances from the United States government that he would not be detained. The Court is aware of no such assurance, which is not surprising given that the government stated that the three Pakistan Deponents who are indicted co-defendants[1] "would be

---

[1] As noted in the Court's previous order (ECF No. 538), though three of the deponents are indicted co-defendants, the taking of a Rule 15 deposition cannot be denied solely because the proposed deponent is a fugitive. *United States v. Mills*, 760 F.2d 116, 1120 (11th Cir. 1985). (The co-defendants are *fugitives* within the meaning of *Mills*. *See id.* at 1120 n.4.) The apparent unfairness of allowing a fugitive to participate in the legal system without "the

2

detained by American security officers" if they appeared at the U.S. Embassy in Pakistan for a deposition. (ECF No. 390 at 17-18.) This evidence establishes unavailability. *See United States v. Medjuck*, 156 F.3d 916, 920 (9th Cir. 1998) ("[T]he Canadian witnesses were unavailable for trial because they were beyond the subpoena power of the United States and refused voluntarily to attend.")

Turning briefly to materiality,[2] Defendants Hafiz and Izhar Khan have been charged with providing monetary support for terrorism and the Pakistani Taliban, and Hafiz Khan has been accused of making statements in support of terrorism. The Defendants' Motions for Rule 15 Depositions and their other filings in support of these motions specify that the proposed deponents will explain how the money sent by the Defendants was used, including first-hand accounts of what the conditions in Pakistan were when the money was sent and why those conditions spurred the Defendants to send money. Considered together, three of the Pakistan Deponents were involved in more than $38,000 of the $46,000 in transactions that the government alleges supported terrorism. The deponents were involved in many of the recorded telephone conversations of the Defendants that the government argues support the charges. Defendants assert that the deponents will provide context for the telephone conversations that will "dispel misconceptions perceived by the prosecution." (ECF No. 364 at 3.) And Defendants contend that the deponents will contradict claims made by the Confidential Human Source. Testimony that addresses the government's allegations or a central defense theory—as this expected testimony plainly does—is material. *Drogoul*, 1 F.3d at 1554.

In sum, the Court finds that the Defendants have made strong showings on the two most important factors in deciding whether to allow Rule 15 depositions. The government's arguments against these strong showings fail to persuade the Court that the depositions should not occur under certain conditions (chief among them being the use of live, encrypted VTC that allows the government to meaningfully participate in the deposition, along with recording of the depositions so that the factfinder can observe witness demeanor if any of the testimony ends up being admitted at trial).

---

check of perjury sanctions" can be outweighed by the importance of preserving "crucial exculpatory testimony." *Guam v. Ngirangas*, 806 F.2d 895, 897 (9th Cir. 1986).

[2] Materiality was analyzed in greater detail in the Court's previous Order. (*See* ECF No. 538.)

The government first points to the general principle that Rule 15 depositions are disfavored. True enough, but the existence of a rule expressly authorizing taking them demonstrates that they can be appropriate, especially in cases like this where there are strong showings of unavailability and materiality: when "prospective witness[es are] unlikely to appear at trial" and "their testimony is highly relevant to a central issue in the case," basic "fairness requires permitting the moving party to preserve that testimony—by deposing the witness[es]—absent *significant* countervailing factors which would render the taking of the deposition[s] unjust." *Id.* at 1552, 1556 (emphasis added). Indeed, "many circuits *have allowed into evidence* Rule 15 depositions of foreign witnesses taken without the defendant present." *United States v. Abu-Ali*, 528 F.3d 210, 238 n.11 ((4th Cir. 2008) (collecting cases) (emphasis added). It is easier to permit a Rule 15 deposition to be taken than it is to permit such a deposition to be used at trial. *See Drogoul*, 1 F.3d at 1554-55, 1557. So the fact that many circuits have allowed such depositions to be used at trial provides good evidence that though the depositions may be disfavored, the hurdles that need to be overcome to allow taking them are not herculean.

The government vociferously argues that the lack of precedent for allowing a foreign deposition to be taken by VTC under Rule 15 underscores "just how irregular" and disfavored such a procedure is. (ECF No. 543 at ¶ 8 n.1.) But even if this is the first Rule 15 deposition taken using VTC, that does not mean that it cannot be used or that it should not be used in appropriate circumstances. All things being equal, the Court would prefer that both government and defense attorneys be able to travel to the deposition room in Islamabad. But that cannot occur. Government attorneys cannot safely travel to Islamabad to participate in the depositions. Using VTC works around this safety problem to preserve evidence critical to Defendants combating the charges they face, while still allowing prosecutors to cross-examine deponents in real time and the factfinder to observe witness demeanor should the depositions be used at trial. Indeed, courts have allowed Rule 15 depositions under circumstances that constituted greater departures from live, in-court testimony than the circumstances under which this Court is allowing these depositions to take place. For example, the Second Circuit approved the taking and use of a Rule 15 deposition under the following circumstances: the prosecutor and defense attorney had to submit their questions in writing; the questions were asked by a French magistrate; neither the prosecutor or defense attorney were present while the questions were asked; the questions were posed in French, translated into Farsi for the witness, and the answers

4

were translated back first into French and then English, and only then transcribed by the English court reporter; no audio or video recordings of the deposition were allowed; the court reporter was permitted to testify about the procedures used during the deposition and the witness's demeanor; there were a "few instances in which [the witness's] attorney answered on her behalf"; the witness failed to answer some questions on her attorney's advice; and some statements by the witness's attorney were not officially translated, but rather summarized by the magistrate. *See United States v. Salim*, 855 F.2d 944, 947-49, 955 (2d Cir. 1988).[3] That courts have allowed departures from live, in-court testimony makes sense because Rule 15 itself is a workaround: in certain circumstances, it authorizes the preserving and using of testimony through depositions in criminal cases despite the strong preference for witnesses testifying in court precisely because sometimes the values behind preserving and using critical evidence that would otherwise be lost trump the customary procedural protections offered to both sides by live, in-court testimony.

The government argues that any oath administered in Pakistan is "completely superfluous" because there is no perjury sanction. (ECF No. 543 at ¶ 12.) This argument's premise—that an oath is meaningless without a perjury sanction—is false. Although perjury sanctions do encourage being truthful, oaths encourage being truthful in other ways and thus do not become meaningless absent a perjury sanction. The Fourth Circuit recognized this truism when it held that the oath used in Saudi Arabia criminal proceedings sufficed for a Rule 15 deposition taken in Saudi Arabia, reasoning that there was no evidence to suggest that the "oath failed to serve its intended purpose of encouraging truth through solemnity." *Abu Ali*, 528 F.3d at 241. Moreover, Rule 15 authorizes foreign oaths to be used. Unless a court order or Federal Rule of Criminal Procedure provides otherwise, the deposition "must be taken and filed in the same manner as a deposition in a civil action." Fed. R. Crim. P. 15(e). Rule 28(b) of the Federal Rules of Civil Procedure in turn provides that foreign oaths may be used. *See* Rule 28(b)(C)

---

[3] Because the government was the party that sought the deposition in *Salim*, the court analyzed whether taking and using the depositions was unfair to the defendant under Rule 15, evidence law, or the Confrontation Clause. *Id.* at 949. That's the reverse of the present case, where the government opposes the Defendants' request for the depositions. But that does not change the analysis. The government asserts that its right to effectively cross-examine defense witnesses is equal to the Defendants' constitutional right to confront witnesses. (ECF No. 543 at ¶ 9.) Though the Court doubts that proposition—the Defendants' confrontation rights are expressly guaranteed in the Constitution and the prosecution's right to effectively cross-examine is not—because the Defendants' rights are at least as great in this regard as the prosecution's, it follows that the logic of cases like *Salim* apply in the present case too.

(authorizing notice depositions to proceed "before a person authorized to administer oaths . . . by the law in the place of examination").

The government's remaining arguments are logistical concerns that can be addressed; to the extent that the solutions are not perfect, the imperfect solutions do not constitute "*significant* countervailing factors which would render the taking of the deposition unjust." *Drogoul*, 1 F.3d at 1552 (emphasis added).

The government argues that the lack of government or court personnel means that "there would be absolutely no effective way for the government or this Court to monitor [the deposition room] for abuses of the sequestration order or other forms of witness 'coaching.'" (ECF No. 543 at ¶ 13.) A camera showing and recording the deposition room will allow the government and this Court to ensure that the witness is not influenced by others.

The government's next concern—that witnesses could not be adequately identified and thus someone could impersonate one of the five individuals the defense seeks to depose—is also addressable. A Pakistan official must be present in the deposition to verify the identity of the witness through official Pakistan government identification.

The government cites "the bad timing of these depositions" as "[p]robably the most serious infringement of the government's cross-examination right." (*Id.* at ¶ 15.) The government has transcripts of recorded telephone calls between the defendants and the Pakistan Deponents, and the government wants to use these transcripts to cross-examine the Pakistan Deponents. But if the depositions occur before all the defendants' translation challenges to these transcripts are resolved—which could result in the deponents' recorded words changing—then the government's ability to use the transcripts to cross-examine may be undermined. To ensure that the translation challenges are resolved first, these depositions will not begin until February 4, 2013, well after the start of the trial on January 2, 2013.

The government's concern that the deposition will not be able to take place before an appropriate officer is also anticipated by the governing rules. As mentioned previously, Rule 15(e) allows the depositions to be taken in the same manner as a deposition in a civil case. Rule 30(b)(5) of the Federal Rules of Civil Procedure provides that the "deposition must be conducted before an officer appointed or designated under Rule 28." Rule 28(b)(C) in turn provides that a deposition in a foreign country may be taken "before a person authorized to administer oaths . . . in the place of the examination." The Court will require that a Pakistan official authorized to

administer an oath be present at the deposition. This official will serve as the person before whom the deposition is taken under Rule 30(b)(5).

To address the government's concerns about a court reporter, the Court will require that a court reporter be in Miami to transcribe the depositions live. The government's concerns about translation issues are overblown and premature. As in *Drogoul*, "[n]othing in the record suggests that a correct translation cannot be obtained in this case, or that the [government] will object to the translation" of the interpreter used by the defense attorneys during the deposition. *Drogoul*, 1 F.3d at 1554. Using interpreters to translate is "an established part of practice in federal courts." *Id.* Moreover, since the depositions will be recorded, an appropriate translator could be appointed to review the recording and resolve any dispute that might arise. *See id.* In *Salim*, the court approved the taking and using of Rule 15 depositions despite multiple languages having to be translated for the witness to understand questions posed in English and for the attorneys to understand the non-English answers. *Salim*, 855 F.2d at 947. This case should pose no greater problem. The remaining government concerns are addressed by the conditions listed below that the court is requiring for the depositions.

## II. Conclusion

For the reasons explained in this Order, the Court finds that the Defendants have established that because of exceptional circumstances and in the interest of justice these depositions should be taken. It is accordingly **ORDERED** (a) that Defendants Hafiz Muhammad Sher Ali Khan and Izhar Khan's Motions for Additional Witnesses for Rule 15[4]

---

[4] The Court notes that the Supreme Court has adopted relevant amendments to Rule 15 that will take effect on December 1, 2012, unless Congress takes action to reject, modify, or defer them. *See Amendments to the Federal Rules of Criminal Procedure*, http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/supct0412/CR_Clean_Rules_2012.doc (last visited November 1, 2012). The pertinent amendment, which will appear as Rule 15(c)(3) under the title "Taking Depositions Outside the United States Without the Defendant's Presence," provides that

> [t]he deposition of a witness who is outside the United States may be taken without the defendant's presence if the court makes case-specific findings of all the following:
>
> (A) the witness's testimony could provide substantial proof of a material fact in a felony prosecution;
> (B) there is a substantial likelihood that the witness's attendance at trial cannot be obtained;
> (C) the witness's presence for a deposition in the United States cannot be obtained;
> (D) the defendant cannot be present because:
>  (i) the country where the witness is located will not permit the defendant to attend the deposition;

Depositions (ECF Nos. 364 and 366) is **GRANTED** and (b) that the depositions may occur only under the following conditions:

1. By December 28, 2012, defense counsel will submit evidence to the Court showing that the Pakistan government **explicitly** (a) permits these depositions to be held or (b) acknowledges that it is aware of these depositions and that no official permission is needed for them to occur.[5]

2. The depositions must be done at a facility in Islamabad, Pakistan that is capable of doing live, encrypted video-teleconferencing.

3. There must be at least three cameras: one showing the witness testifying in Pakistan, one showing the room where the deposition is held, and one in the Miami federal courtroom that will show the government attorney conducting the examination. The camera showing the deposition room must be placed so that all persons in the room are visible. The two groups—government prosecutors in Miami and the people in the deposition room in Islamabad, Pakistan—must be connected through live, encrypted video-teleconferencing. The Defendants shall be present in the courtroom.

---

(ii) for an in-custody defendant, secure transportation and continuing custody cannot be assured at the witness's location; or
(iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and
(E) the defendant can meaningfully participate in the deposition through reasonable means.

Even if this amended rule governed, the Court would still grant the Defendants' Motions for Additional Witnesses for Rule 15 Depositions (ECF Nos. 364 and 366). The witnesses' testimony "could provide substantial proof of a material fact" in this felony prosecution. The witnesses are substantially unlikely to attend the trial and their attendance at a deposition in the United States could not be obtained for the same reasons that they will not attend the trial. The Defendants cannot be present during the deposition because the security concerns raised by the government that the Court previously upheld in its Order (ECF No. 538) would prevent United States Marshals from safely and securely transporting the Defendants to Islamabad, Pakistan. The last condition of the proposed amendment is satisfied because the Court requires that the Defendants be present in the courtroom to hear the live audio of the depositions and be able to contact their attorneys over the telephone.

[5] Neither condition (a) (the Pakistan government's explicit permission) nor condition (b) (the Pakistan government's express acknowledgement that no permission is needed) is arguably required for these depositions to occur, at least as a matter of United States law. Rule 15(e) provides that the depositions must be taken in the same manner as a civil-action deposition. Rule 28(b) of the Federal Rules of Civil Procedure specifies four ways that a deposition may be taken in a foreign country. The first two—(1) under a treaty or convention or (2) under a letter of request to the foreign government—would almost certainly require the permission of the foreign government. *See* Rule 28(b)(A-B). But the last two—(3) "on notice, before a person authorized to administer oaths either under federal law or by the law in the place of examination" or (4) "before a person commissioned by the court to administer any necessary oath and take testimony"—do not appear to require a foreign government's permission or acknowledgement. *See* Rule 28(b)(C-D). The Court is requiring Defendants to obtain either Pakistan's express permission or acknowledgement that no permission is needed because the Court does not want all the preparations for the depositions to be laid (VTC equipment, plane tickets for defense attorneys to travel to Islamabad, etc.) only to have the depositions fall through at the last minute because the Pakistan government will not allow them to occur.

4. There must be a mechanism for the government to show exhibits to the witness during cross-examination and for defense counsel to show the government attorneys exhibits used during direct examination. This must be done by camera, Elmo, or some similar means that are like a live feed. Internet and email options do not suffice.

5. Defense attorneys may be present in the room where the deposition is held.

6. There must be one or more Pakistan officials that either alone or together are authorized to administer an oath and verify the identity of the witnesses. The oath administered must be the oath normally administered to witnesses testifying in criminal trials in Pakistan. If no oath is administered to witnesses testifying in such trials, then the oath administered must be equivalent to the oath administered to witnesses testifying in United States criminal trials. Each witness's identity must be verified using official, Pakistan government identification (for example, a passport). The official who administers the oath will serve as the person before whom the deposition is taken under Rule 30(b)(5), and will perform the duties listed in Rule 30(b)(5).

7. No one may be in the room where the deposition is held other than the testifying witness, defense attorneys, Pakistan officials necessary to administer the oath and identify the witnesses, interpreters, and people necessary to operate the cameras and video-teleconferencing equipment.

8. A court reporter must be in Miami to transcribe the depositions live. A video recording of the depositions must be made.

9. The depositions will begin on February 4, 2013. They will go from 9:00 a.m. to 6:00 p.m. Miami time every day—including weekends—until they finish. Each day, there will be a 15-minute break in the a.m., a 1.5-hour lunch break, and two 15-minute breaks in the p.m. If defense attorneys have any concerns about a witness's availability on Saturday, Sunday, or other day, then those attorneys should schedule the witness on days when there are no concerns. If a witness is unable to be deposed given these time constraints, then that witness will not be deposed. The Court will make no exceptions.

10. Time is of the essence in carrying out these depositions. The Court has made reasonable accommodations to allow these depositions to occur. **There will be no more accommodations.**

**DONE and ORDERED** in chambers at Miami, Florida, on November 2, 2012.

_____
**ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE**

*Copies to:*
U.S. Magistrate Judge Ted E. Bandstra
Counsel of Record