UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20331-CR-SCOLA/BANDSTRA

UNITED STATES OF AMERICA

v.

HAFIZ MUHAMMAD SHER ALI KHAN, et al.

    DEFENDANTS.
_____/

### SENTENCING MEMORANDUM FOR HAFIZ MOHAMMAD SHER ALI KHAN

The defense respectfully submits this document to aid the Court's determination of an appropriate sentence for Mr. Khan.  Pursuant to the following relevant factors outlined in 18 U.S.C. 3553 this Court should apply a variance from the sentencing guidelines in order to find a punishment that is sufficient but not greater than necessary as to Mr. Khan.

Pursuant to U.S.C. 3553,

(a) Factors To Be Considered in Imposing a Sentence.  The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. The court, in determining the particular sentence to be imposed, shall consider:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established
(5) any pertinent policy statement—
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

1

In the case of a material support of terrorism charge the court is faced with the application of a terrorism enhancement pursuant to 3A1.4 which increases the guideline range by adding six levels to the Criminal History Category and twelve levels to the Offense Category. In the present case probation has calculated the advisory guidelines range to be level 43 History VI, a range of 720 months imprisonment, or 60 years. When looking at the various material support cases throughout the United States over the past several years and the history and characteristics of Mr. Hafiz Mohammad Sher Ali Khan the Court should vary the sentence below the guidelines and impose a sentence in line with Mr. Khan's conduct and other similar conduct by defendants over the past decade.

### Nature of the Offense

Mr. Khan took the stand in his own defense and testified for several days. The Court having been present does not need a detailed page and line re-enactment of the trial, however some facts are specifically relevant to sentencing. 18 U.S.C. 2332b(5)(A) states a crime of terrorism is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. Relevant facts are those that deal with Mr. Khan's actual conduct, his actions and the motivation for those actions. The need to deter future conduct based upon Mr. Khan being of an ideology that is dangerous to American interests is a false conclusion as Mr Khan's ideology is not in line with the TTP or terrorism.

The government's own witnesses made clear they do not know what amount of money, if any, went to the Pakistan Taliban. In fact in closing arguments the government placed heavy weight upon the fact that it was irrelevant if even one dollar went to support the Pakistan Taliban, TTP. The crime was a crime of intent and Mr. Khan's words on the phone to his family

and especially to the informant Mr. Siddiqi were the evidence of his intent. However for the purpose of sentencing Mr. Khan's conduct should be viewed closely to determine his intentions and his acts, based upon the trial testimony and evidence. Material support of terrorism is a crime motivated by ideology that turns into action anathema to the goals of peace and democracy. As was evident at trial Mr. Khan was not motivated to send funds based upon ideology. In fact Mr. Khan's ideology is quite the opposite from undemocratic.

Mr. Khan sent funds to his family and friends, either directly or through locals in the Swat Valley. Numerous phone calls were presented that very specifically laid out where the funds were to go. A majority of funds was clearly going to the madrassa Mr. Khan supported in his family village of Kala Kalay, Swat, Pakistan. Call after call described in detail the need to fix the roof of the mosque, build an addition for the girls to have a separate place to study as they became older, pay for teachers at the school, and deal with routine expenses such as gas for the generator and regular repairs. Some funds were clearly destined for his daughters, grandson, and other family members.

As the family patriarch it fell upon Hafiz Khan to answer the pleas for support when family reached out from the impoverished mountain village to the relatively more affluent cab driver and religious teacher members of the family in South Florida. Mr. Khan answered the pleas and arranged to send funds to whoever needed it. The calls indicate Mr. Khan did not ask about political positions prior to deciding who should receive funds. If someone was in need he would do what he could. To be clear, Mr. Khan is not a wealthy man. He often agreed to give funds he did not yet have himself by raising or borrowing as is allowed in his faith, giving of charity to the poor is an obligation.

A substantial amount of the funds the government focused upon in trial were sent during

the time when Mr. Khan's village fled to the larger cities of Northern Pakistan in order to avoid the fighting between the Taliban and the Pakistan Army. These refugees were known as IDP's, internally displaced persons, and based upon the undisputed testimony at trial this was a massive relocation of over a million people including Mr. Khan's family members.  Much of the funding was sent to these family members outside of the Swat Valley where these funds would be used to pay for rent and food once they could no longer continue the tent city life the Pakistan government had set up.

Some funds were destined for a nephew of Mr. Khan, known as Amjad or Jameel. Jameel grew up with Mr. Khan's sons.  He was particularly close to one of Mr. Khan's son's who was of similar age.  This son of Mr. Khan's died when he was a teenager of a physical ailment. Mr. Khan continued to treat Jameel like a son after the death of his own son. This same Jameel was allegedly seriously injured. Some calls indicated Mr. Khan believed Jameel was injured accidentally, some calls indicated he was injured in fighting against the Army.  In each call it seemed irrelevant to Mr. Khan the reason for the injury, he always asked if Jameel or his wife needed help.  When he was told they did Mr. Khan agreed to send some funds that could in part be used to assist Jameel and his family.

Some funds were requested to be sent for zakaat (religious charitable obligation) to one Noor Mohammad in Karachi.  The government claims this individual is a Taliban member who was injured fighting the Americans.  Mr. Mohammad's testimony was truncated but it is worth proffering that he had proof in the form of his unscarred back that he was never shot in the back as claimed by the informant. He was in fact a vendor on the streets of Karachi, extremely poor with numerous children. Mr. Khan asked his son in law Anayatullah who would be deserving of charity and he was told Noor Mohammad. There is no evidence other than the words of Mr.

Khan to the informant that Noor Mohammad is anything but someone in need of charity.

Of the many phone calls transcribed for the jury numerous included Mr. Khan's rants against the Pakistan government. Mr. Khan's testimony made clear he accepts these as statements made in frustration and anger but not as plots or plans to be carried out. The calls in most cases speak for themselves when placed within the broader context of the entire call. Mr. Khan also made statements on many occasions about how Pakistan was not operating as a democracy in favor of its citizens. That those located in Islamabad and Rawalpindi who made the decisions for the people of Swat which lead to violence and the killing of locals from his village would feel different about such operations if they violence was conducted in their own back yards. He would also state that Pakistan would be better off if the United States would run the country as people would be fairly treated, not dependant on the tribe or province they came from for justice.

Mr. Khan's position on democracy is not the only area in which his ideology is in opposite to the Taliban. Mr. Khan worked very hard to insure that girls could attend his madrassa after attending regular public school. He was intent on building a separate building for older girls so they could continue to learn even after they reached an age where it was locally inappropriate for them to be studying in mixed gender classes. In numerous calls to his family, not knowing the government was recording him, Mr. Khan railed at those in his village and religious leaders in Swat who sought to curtail the education of women and girls. Mr. Khan's own two daughters are educated and became educators themselves.

### **Characteristics of Mr. Khan**

Hafiz Khan was born in Swat in a farm house approximately 12 years before Pakistan

was established.  He is the eldest of 8 siblings, five brothers and two sisters, and was claimed to be born on May 10, 1935.  His birth date is conjectural because there was no record keeping of births in that region;  his real age could be 5 to 10 years older.  He grew up without electricity, television or radio.  He is truly transported from another place and time.  Hafiz came to the United States when he was elderly and has remained isolated.

While in custody he has been unable to communicate due to the language barrier.  He speaks only spoke Pashto and Urdu.  He remained isolated in a very small segment of jail population.  He has numerous medical problems that require constant care.  He experiences the type of memory loss due to his age that one would expect and progressive mental deterioration; he has been diagnosed with Age Related Cognitive Decline.

Mr. Khan is an albino, the lack of pigment resulting in poor vision since birth.  His poor eyesight precluded him from being allowed to attend regular schools.  He received his basic Islamic education at a nearby mosque.  He memorized the Quran, Muslim holy book, at a very young age and attended religious schools/madrassas for religious studies.  He never worked a regular job in Pakistan because of his vision, but worked as an Imam for a few years before starting his own mosque.  He started to build the mosque with the help of community and donations in the 1970's; the complex is primarily designed as a school and the as yet incomplete dormitories for older children.  He started a madrassa along with the mosque to give basic education to children without charging tuition to the students.

His brother, Shah Khan, came to the United States in 1969 to achieve a higher education and subsequently was employed in the United States.  In 1983 Shah Khan applied for other family members to immigrate to the United States.  After 10 years, Hafiz Khan was able to get an immigrant visa and came to the United States.  He arrived on January 24, 1994 when he was

by his current documentation approximately 60 years old. He brought with him his son, Irfan Khan. His wife, Fatima Khan, and two other sons came a year later. Two additional children, Ikram Khan and Amina Khan were not able to emigrate because of their age. His younger daughter, Husna Khan, was also not able to come because of her unfinished school. One son, Ihsan Khan, died of pneumonia in 1991.

Hafiz stayed with his brother in New Orleans for three months after arriving in the U.S. Initially he taught the Quran at an Islamic school in New Orleans. That school was closed three months later due to an accidental fire and Hafiz lost his position. A friend helped him obtain an "Imam" (preacher) position at the Flagler mosque in Miami. Hafiz came to Miami in July of 1994 and started his job earning a $500 monthly salary. He lived in the mosque until December 1994 when the rest of his family came to Miami. He rented house next to the mosque where he resided with his family for many years. When his children moved out of the family house, Hafiz and his wife moved into the efficiency in the back of the house where he lived until his arrest.

**Medical problems:**

Hafiz Khan has numerous medical problems (Exhibit A). ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[redacted]

[redacted] Dr. Edda I. Aponte has recommended "to place this elderly inmate in general population where he can receive support and help with other inmates with his daily activities but this has been denied."

**Psychological:**

Hafiz Khan's family has noticed memory loss and behavioral problems that occurred as a result of the aging process. Mr. Khan was evaluated at the US Medical Center for Federal Prisoners in Springfield, Missouri. The Diagnostic Impression is "Age Related Cognitive Decline." (Exhibit B) Mr. Khan experiences memory loss involving names, appointments and problem solving.

Mr. Khan has monthly psychological evaluations according to the policy of prisoners who are housed in the SHU (Special Housing Unit). The Psychology Data System from the Federal Detention Center has consistently rated that his threat to others as **LOW** (emphasis in the

original); he is usually observed praying or speaking quietly to himself. (Exhibit C)

Mr. Khan was evaluated by Dr. Jeffrey M. Gran, a neuropsychologist. He has diagnosed him with Mild Cognitive Impairment (MCI) which is cognitive impairment beyond Age Related Cognitive Decline. This condition results in "noticeable decline in cognitive abilities, including memory and thinking skills." Individuals with MCI are at increased risk of developing dementia. Dr. Gran's testing also clarified prior examinations finding a degree of malingering by Hafiz. It was in fact Mr. Khan's lack of understanding of what he was tasked in the "tests" and not his attempts to obfuscate that lead to prior incomplete results.

Mr. Hafiz Khan is an elderly man who has numerous medical conditions. He has been housed in the Special Housing Unit due to his charges since May of 2011. Hafiz has medical and physical problems such as difficulty walking and red, swollen ankles. The psychologist has recommended placement in general population where he can receive help and support from other inmates with his daily activities but this has been denied. Deputy U.S. Marshall Sean P. McCaffrey is in charge of Mr. Khan during transportation. He has never had a problem with Hafiz transporting him to court (See Exhibit E). His only concern is the potential of a medical emergency.

Mr. Khan should be housed in a facility that can care for his existing medical problems. His medical problems will continue to get progressively worse as he ages and he will continue to mentally deteriorate.

## Avoiding Disparate Sentences

The need to avoid disparate sentences is a key aspect of public perception as to the actual equities at play within the justice system. A wide range of sentences have been meted out over the past decade for material support related conduct. An important consideration when looking

at avoiding disparities between defendants is the nature of the offense and the conduct of the defendant in that offense.

| Defendant/Case | Relevant information | Sentence |
|---|---|---|
| Saleh Elahwal 06-CR-1054-2 SDNY (Exhbit F) | Charged with providing material support or resources to Hizballah. | 17 months, 3 years supervised release |
| Saifullah Durrani 02-CR-2912-02 CASD (Exhibit G) | Material support of terrorists that involved a scheme to import heroin and hashish and purchase stinger missiles for the support of the Afghan Taliban. | 57 months, 5 years supervised release. |
| Sami Al-Arian, 03-CR-77-T-30TBM MDFL (Exhibit H) | Defendant was charged with conspiring to raise funds for the Palestinian Islamic Jihad, a DFTO, over a period of ten years. | 57 months, 3 years supervised release. |
| Oytun Mihalik, 11-00833(a) CACD. (Exhibit I) | Charged with material support. Traveled overseas and had email contact admitting to wanting to assist Al-Qaeda. Plea of guilty. Guidelines range was 15 years. Govt. recommendation was 12 years. | 60 months, deportation, all fines waived. |
| Hor. I. Akl, 10-CR-251-01 OHND (Exhibit J) | Material support of a Designated Foreign Terrorist Organization (DFTO), Hizbollah, and money laundering. Additional charges were bankruptcy fraud and perjury. | 75 months, 3 years supervised release. (spouse co-defendant sentenced to 40 months). |
| Faysal Galab 02-CR-00214-05 WDNY (Exhibit K) | Making and attempting to make a contribution of funds, goods, and services to and for the benefit of specially designated terrorists, Al-Qaeda. | Originally sentenced to 84 months, 3 years supervised release (modified 3/9/2008 – released on supervised release, served approx.. 51 months) |
| Raja Lahrasib Khan, 10-CR-240 ILND (Exhibit L) | Material support or resources to terrorists. The support was to the organization Al-Qaeda. | 90 months, 3 years supervised release. |
| Hammad Abdur-Raheem, 03-CR-296-A EDVA (Exhibit | Conspiring to provide material support to Lashkar-e-Taiba, a | 97 months, 3 years supervised release. (modified to 52 |

10

| | | |
|---|---|---|
| M) | Kashmiri separatist group operating out of Pakistan. | months) |
| Wassim Mazloum 06-CR-719-03 OHND (Exhibit N) | Conspiring to provide material support and conspiring to kill, murder, kidnap and maim. Essentially a government sting that had the defendants agree to train with hand guns for activities in Iraq. This defendant's role consists of funding the operation and agreeing to build IED's. | 100 months, life term supervised release. |
| Yahya Goba 02-CR-00214-01WDNY (Exhibit O) | Providing material support to a foreign terrorist organization, in this case going to train with Al-Qaeda. | 108 months, 3 years supervised release |
| Douglas Wright, 12-CR-00238-001 OHND (Exhibit P) | Conspired to use weapons of mass destruction to blow up the Brecksville-Northfield High Level Bridge. | 138 months, life term supervised release. |

All of these cases are related to terrorism. In some cases the court found the terrorism enhancement to be inapplicable. As stated in Hafiz Khan's objection to PSIR the terrorism enhancement has not been proven applicable in this case. Pursuant to Application Note 1 of U.S.S.G. § 3A1.4, a " '[f]ederal crime of terrorism' has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." That provision contains a two part definition: (1) the crime must be "an offense that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" *and* (2) the crime must be listed in § 2332b(g)(5)(B). The government has failed to show how Mr. Khan's conduct was intended to coerce the government of Pakistan.

In many the terrorism enhancement was applicable however the court found a variance was warranted based upon the particular circumstances of the individual. In all cases cited the court sentenced the defendant below guidelines. Under § 4A1.3(b) if a criminal history category

11

of VI substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes a court may downward depart. The conduct in many of these cases was far more egregious than that assigned to Mr. Khan. All of these defendants provided or agreed to provide funds or training (in some cases allowing themselves to be trained) by organizations such as Hibzollah, Hamas, Al-Qaeda and the Taliban.

Hafiz Khan did not plot any particular events as some of the defendants listed herein have admitted.  He did not agree either explicitly or implicitly to help bomb a target or kill an individual or do any specific harm to anyone as many of the defendants listed herein have admitted. The defendant should be punished for his conduct, not for exercising his right to challenge the government's evidence at trial. So whether a case was a guilty plea or a trial is not the key factor in determining disparity, it is the action the person committed and the motivation of that person.

## Need for the Sentence Imposed

The need to impose a sentence encompasses reflecting upon the seriousness of the offense, promoting respect for the law, and imposing a just punishment.  Material support of terrorism is a serious charge. Hafiz is well aware of this after spending over two years in solitary confinement, barely able to communicate with those responsible for providing him food, medical attention, and exercise. In Hafiz's case the Court should look to his conduct and not the title of the statute of which he was convicted to determine a just sentence.  Hafiz has no criminal past, neither in the United States nor in Pakistan, and he is at least 78 years old. He respects the law. As he stated in his own testimony he did not and does not believe he was breaking the law.  The sentence should not be a death sentence. When looking at the goals of sentencing an over arching rubric is "sufficient but not greater than necessary…" 18 U.S.C. 3553.  The Court must look at

the sentence in light of the purpose of sentencing. Two important goals of sentencing include protecting the public from further crimes of the defendant and deterring similar conduct. Hafiz Khan is not a danger to the public, even Bureau of Prison staff have acknowledged that. It is difficult to determine if a sentence in one man's case will prevent similar conduct by others, it will prevent Hafiz Khan from ever sending funds overseas in the future.

Mr. Khan's declining mental state also effectively renders a lengthy prison sentence for the purpose of teaching him a lesson a less than effective tool.

## Conclusion

For the foregoing reasons Mr. Khan should be sentenced below the guidelines range to a sentence that adequately reflects his conduct.

Respectfully submitted,

_____/s/_____
Khurrum B. Wahid
FL Bar No. 178764
*Counsel for Hafiz Mohammad Sher Ali Khan*
Wahid Vizcaino, LLP
6221 W. Atlantic Blvd
Pompano Beach, FL 33063
Phone: (305) 444-4303
Fax: (305) 444-4302

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of August , 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either by electronic transmission generated by CM/ECF, or in some other manner for those counsel or parties who are not able to receive electronic filings.

                                        Respectfully submitted,

                                        Wahid Vizcaino, LLP
                                        6221 W. Atlantic Blvd
                                        Margate, FL 33063
                                        Phone: (305) 444-4303
                                        Fax: (305) 444-4302
                                        khurrum@wvmlawfirm.com


                                        _____/s/_____
                                        Khurrum B. Wahid
                                        FL Bar No. 178764